# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 26-cr- |
| v. | : | DATE FILED: _____ |
| QUAL-TRAN PRODUCTS COMPANY LLC | : | VIOLATION:<br>15 U.S.C. § 1 (conspiracy to restrain trade – 1 count) |
| | : | |

## INFORMATION

### COUNT ONE
#### (Conspiracy to Restrain Trade)

**THE UNITED STATES OF AMERICA CHARGES THAT:**

At all times material to this information:

### BACKGROUND

#### Relevant Entities and Individuals

1.      Defendant QUAL-TRAN PRODUCTS COMPANY LLC ("QUAL-TRAN") was a limited liability company founded in Hatfield, Pennsylvania. Defendant QUAL-TRAN supplied transportation parts to transit agencies across the United States, including to the Southeastern Pennsylvania Transportation Authority ("SEPTA") described below.

2.      Cathleen Shive, charged elsewhere, was an individual who resided in Lansdale, Pennsylvania. Shive was employed by defendant QUAL-TRAN as a Business Manager/Sales Support Specialist from in or about June 2011 to in or about October 2024, and was its President and Owner from in or about October 2024 to the present.

3.     SEPTA was a regional public transportation authority that operated bus, rail, and trolleybus lines in and about Philadelphia, Pennsylvania. SEPTA received federal funds.

4.     Person #1 was an individual who resided in Philadelphia, Pennsylvania. Person #1 was employed by SEPTA as a Resource Controller from in or about August 2016 to in or about August 2019, and as a Senior Resource Controller from in or about August 2019 to in or about June 2025.

5.     Person #2 was an individual who resided in Lansdale, Pennsylvania. Person #2 was employed by defendant QUAL-TRAN as the Managing Director/President from in or about 2009 to in or about October 2024.

6.     Corporation #1 was a company incorporated in Philadelphia, Pennsylvania. Corporation #1 manufactured and supplied transportation parts to SEPTA.

7.     Person #3 was an individual who resided in Southampton, Pennsylvania. Person #3 was employed by Corporation #1 as the President from in or about 2011 to in or about September 2023.

8.     Person #4 was an individual who resided in Huntingdon Valley, Pennsylvania. Person #4 was employed by Corporation #1 in Sales/Operations from in or about September 2023 to the present.

9.     Corporation #2 was a company incorporated in Exeter, Pennsylvania. Corporation #2 manufactured and supplied transportation parts to transit agencies across the United States, including to SEPTA.

10.     Person #5 was an individual who resided in Somerville, New Jersey. Person #5 was employed by Corporation #2 in Sales from in or about 2013 to the present.

2

**SEPTA's Bidding Process**

11.    SEPTA regularly needed to purchase transportation parts, such as equipment for rails, buses, or trains. When SEPTA needed to procure parts, it solicited them from suppliers through a competitive bidding, or requisition, process. That requisition process was designed to ensure that SEPTA, and the taxpayers who funded it, purchased goods at competitive prices.

12.    SEPTA used an electronic procurement system ("EPS") for monetarily significant requisitions (*i.e.*, those with a value above $3,000) to procure parts. Solicitations were posted publicly on EPS to encourage participation by multiple bidders.

13.    SEPTA expected bidders to formulate their bids confidentially and independently from one another. The confidentiality and independence of the bids was essential to maintain integrity and fairness during the bidding process and to ensure that SEPTA received competitively priced bids.

**The Sherman Antitrust Act**

14.    The Sherman Act, 15 U.S.C. § 1, prohibits agreements among competitors to engage in anticompetitive activity, such as fixing prices or rigging bids.

15.    Bid-rigging schemes involve an agreement among two or more bidders that predetermines the winning bidder and limits or eliminates competition. One type of bid-rigging agreement is called "complementary bidding" (also known as "cover" or "courtesy" bidding), which is where competitors agree that at least one of them will submit a bid that is too high to win, or that contains terms that will not be acceptable to the buyer. Such bids are not intended to win but instead are designed to give the false appearance of genuine, competitive

3

bidding. Such bids also make it more likely that the predetermined winning bidder will be successful.

16.    When competitors conspire to rig bids, it often allows them to raise prices where purchasers—often federal, state, or local governments—seek to acquire goods or services by soliciting competitive bids. Complementary bidding schemes defraud purchasers by creating the appearance of competition to conceal secretly inflated prices.

**DESCRIPTION OF THE OFFENSE**

17.    Beginning in at least as early as in or about March 2016 through at least as late as in or about November 2024, Cathleen Shive, defendant QUAL-TRAN, and their co-conspirators engaged in a conspiracy to rig bids submitted to SEPTA.

18.    Defendant QUAL-TRAN and Corporation #1 often held themselves out to SEPTA as genuine competitors when, in reality, they were coordinating the submission of their bids to SEPTA.

19.    On multiple occasions, defendant QUAL-TRAN, acting through Cathleen Shive, and Person #2 agreed with Person #3 and Person #4 that Corporation #1 would submit an intentionally losing bid that was designed to allow defendant QUAL-TRAN to win. On other occasions, the co-conspirators agreed that defendant QUAL-TRAN would submit the intentionally losing bid so that Corporation #1 would win.

20.    Other times, defendant QUAL-TRAN, through Cathleen Shive and others, posed as Corporation #1 and directly submitted intentionally losing bids on behalf of Corporation #1. Such bids were designed to make it falsely appear to SEPTA that it had received bids from more than one supplier, and to help defendant QUAL-TRAN win.

4

21.    Defendant QUAL-TRAN and Cathleen Shive also conspired with additional vendors, including Corporation #2, so that those other vendors would submit intentionally losing bids to SEPTA. Those bids were likewise designed to create the false appearance of competition, and to allow defendant QUAL-TRAN to win.

22.    Defendant QUAL-TRAN, Cathleen Shive, and their co-conspirators' anticompetitive activity was facilitated and sometimes initiated by an insider, a Senior Resource Controller at SEPTA, Person #1.

### Representative Bids

23.    **Requisition No. RSL183060074.** In or about December 2017, defendant QUAL-TRAN, through Cathleen Shive, submitted one bid to SEPTA on behalf of itself, and another fraudulent complementary bid, purportedly from Corporation #1, using the EPS login credentials of Corporation #1. Defendant QUAL-TRAN won the requisition. The purportedly competing bids were both submitted from an Internet Protocol (IP) address that was registered to Person #2's name and to Shive's home address.

24.    **Requisition No. RSL183031010.** On or about October 20, 2020, Person #1 emailed Cathleen Shive and Person #2, notifying them that SEPTA had posted a requisition on EPS, and stating, in part, that "[t]wo or three quotes would be perfect. The sooner that you accomplish this, the sooner I can issue the purchase order." On or about October 22, 2020, Shive asked Person #3 to submit a complementary bid on behalf of Corporation #1 and provided Person #3 with the particular price that Corporation #1 should bid at, stating, in part: "Please submit a quote for RSL183031010 $562 each." Defendant QUAL-TRAN submitted the winning quote at the price of $552 per unit, and Corporation #1 submitted an intentionally losing quote at the slightly higher price of $565 per unit. A third quote of $587 per unit was also submitted from

5

the same IP address from which defendant QUAL-TRAN's winning quote was submitted. That IP address was registered to Person #2's name and to Shive's home address.

25.    **Requisition No. ICA231944321.** In or about September 2023, Cathleen Shive communicated via text message with Person #1 (the Senior Resource Controller at SEPTA) to arrange for Corporation #2 to submit an intentionally losing bid on a requisition that defendant QUAL-TRAN sought to win. Shive and Person #1 discussed the price at which Corporation #2 should bid, which was deliberately higher than defendant QUAL-TRAN's price. Person #1 then emailed Person #5, and copied Shive, stating, in part: "I was wondering, when you have time if I could interest you in courtessy [sic] quoting on eps ICA231944321 for 30 manho[l]e frames and lids." Person #1 also instructed Person #5 to provide a false explanation for bidding, stating, in part, "Should anyone ask, just say you happened to see it and thought you would throw a number in." Person #1 also provided the precise price for Person #5 to submit, stating, in part, "If you can quote, go with $3,310 each," which was a higher number than defendant QUAL-TRAN planned to bid. Thereafter, Person #5 submitted Corporation #2's quote at the directed price, $3,310 per unit. On or about October 30, 2023, a representative from SEPTA informed Shive and Person #2 that defendant QUAL-TRAN had won the requisition.

26.    **Requisition No. ICA242076459.** On or about July 30, 2024, Cathleen Shive emailed Person #4 regarding a requisition on EPS. Person #2 was copied on the email. In the email, Shive explained the scheme to Person #4. She stated, in part, that defendant QUAL-TRAN and Corporation #1 would, in the past, supply a "2nd quote" for each other and, in a subsequent email on or about August 1, 2024, told Person #4: "If you want us to put in a 2nd quote, tell us the number we need to go above." In response, Person #4 informed Shive that Person #4 had submitted a quote for $327 each. Shive responded: "Ok. I will submit." As agreed,

defendant QUAL-TRAN then submitted an intentionally losing quote priced higher than $327 per unit.

## THE CHARGE

27.    From at least as early as in or about March 2016 through at least as late as in or about November 2024, in the Eastern District of Pennsylvania and elsewhere, defendant

## QUAL-TRAN PRODUCTS COMPANY LLC,

together with Cathleen Shive, Persons #1 through #5, Corporations #1 and #2, and others known and unknown to the United States of America, knowingly entered into and engaged in a combination and conspiracy to rig bids for requisitions to SEPTA. The combination and conspiracy engaged in by Shive and defendant QUAL-TRAN, and their co-conspirators, was a *per se* unlawful, and thus unreasonable, restraint of interstate and foreign trade and commerce, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## TRADE AND COMMERCE

28.    During the time period covered by this information, the business activities of defendant QUAL-TRAN, Cathleen Shive, and their co-conspirators that are the subject of this information were within the flow of, and substantially affected, interstate trade and commerce. Records, documents, and communications which were necessary for the procurement and provision of services by defendant QUAL-TRAN, Shive, and their co-conspirators to SEPTA traveled in interstate and foreign commerce. In addition, a portion of SEPTA's payments to defendant QUAL-TRAN and Corporation #1 were derived from the federal funding that SEPTA received each year during the time period covered by this information.

All in violation of Title 15, United States Code, Section 1.


STANLEY E. WOODWARD, JR.
ASSOCIATE ATTORNEY GENERAL
U.S. Department of Justice

Salvatore L. Astolfi for
DAVID METCALF
UNITED STATES ATTORNEY


DANIEL W. GLAD
ACTING DEPUTY ASSISTANT ATTORNEY
GENERAL FOR CRIMINAL ENFORCEMENT
U.S. Department of Justice, Antitrust Division


DAVID CHU, Acting Chief, NYO, Antitrust Division
Stephanie Raney, Trial Attorney
Sarah McKani, Trial Attorney
Daniel Kozimbo, Trial Attorney

8

*No.* _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

QUAL-TRAN PRODUCTS COMPANY LLC

INFORMATION

15 U.S.C. § 1 (conspiracy to restrain trade - 1 count)

A true bill.

_____
Foreperson

Filed in open court this _____day,
Of _____A.D. 20_____

_____
Foreperson

Bail, $_____